**Michael Alvin KRAUSE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–05–01136–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 12, 2007.

Discretionary Review Refused
Oct. 31, 2007.

Richard H. Branson, League City, TX, for Appellant.

Susan W. Martin, Kurt Sistrunk, Criminal Dist. Attys.–Galveston County, Galveston, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and ALCALA.

## OPINION

TIM TAFT, Justice.

A jury convicted appellant, Michael Alvin Krause, of possession of child pornog-

raphy. *See* Tex. Pen.Code Ann. § 43.26 (Vernon 2003). The trial court assessed punishment at nine years in prison and a $10,000 fine. We determine (1) whether the trial court erred by denying appellant's motion to suppress evidence that was taken from appellant's home and business by private citizens; (2) whether the trial court erred by admitting into evidence photographs of appellant with his genitals exposed; (3) whether the trial court erred by adding language to the jury-charge instruction required by article 38.23 of the Texas Code of Criminal Procedure; (4) whether the trial court erred by admitting testimony of the State's expert witness, Agent David Hendricks; and (5) whether the evidence was factually sufficient to show that appellant knowingly possessed child pornography. We affirm.

## Background

In the summer of 2003, Misty Hebert met appellant in a recreational vehicle ("RV") park where they both lived. Appellant had befriended Hebert's 12–year-old son, C.H., who had helped appellant move some of his belongings from different trailers. Appellant, Hebert, and Nancy Hunt, Hebert's mother, became friends and opened a resale store.[1] At first, Hebert lived at the resale store with her two sons, and appellant lived in his RV, which was parked behind the resale store. When C.H. later began to experience problems at school, Hebert took C.H. out of school. Hebert allowed appellant to home-school C.H. because appellant had told Hebert that he had been a Pentecostal preacher and had helped "problem teens"

by home-schooling them. C.H. would attend school in a room at the back of the resale store. C.H. used a blue computer[2] and a white laptop to work with during the home-school hours. C.H. later moved into the RV and lived with appellant.

In December 2003, C.H. traveled to Wisconsin with appellant. Hebert was contacted by Wisconsin authorities who asked whether C.H. had been kidnapped. They told her that appellant was being investigated for possession of child pornography and abuse of two other boys. Hebert made arrangements for C.H. to return home by plane that evening. When C.H. returned home, Hebert and C.H. entered appellant's RV on or about December 8, 2003 to get C.H.'s belongings. Hebert broke a window, and C.H. climbed through it and opened the door. C.H. and Hebert removed C.H.'s belongings, including a white laptop that appellant had given to C.H. to do his daily schoolwork and a gray compact disc ("CD") case that Hebert thought contained C.H.'s games.

Hebert and C.H. went to Hunt's house, where she discovered that the CD case that she had taken did not belong to C.H. The CD case belonged to appellant and contained CD's with images of young males who were naked and engaged in sexual activities. Hebert, Hunt, and C.H. returned to appellant's RV a second time to retrieve the rest of C.H.'s belongings. They also went to the resale store.[3] On that trip, they took appellant's black laptop, safe, blue computer, and briefcase "in order to turn it [sic] over to the authorities."[4] They took these items to Hunt's

---

1. Appellant and Hunt paid the rent, and Hebert worked at the resale store.

2. The "blue" computer is described as a "big blue hard drive" or "computer tower."

3. C.H. testified that Hunt did not go with Hebert and him on the second trip to appel-

.lant's RV and the resale store. However, Hebert testified that Hunt was present when they removed the items from the resale store.

4. On the second trip, it is unclear which items were taken from the RV and which were taken from the resale store. For example,

house, where they opened the safe and found paperwork and an external hard drive.

The next day, Hebert called the Federal Bureau of Investigation ("FBI") and the Galveston County Sheriff's Department. Sergeant Mark Bonner of the Galveston County Sheriff's Department went to Hunt's house and took Hebert's, Hunt's, and C.H.'s statement. Deputies then took the safe and its contents, white laptop, black laptop, blue computer, briefcase, and CD case, which had approximately 22 CD's in it. They recorded a conversation between Hunt and appellant, in which he admitted that the white laptop and safe belonged to him. The deputies obtained search warrants to view the contents of the safe and to view the contents of the CD's and hard drives.

The Galveston County Sheriff's Department gave the electronic evidence to the FBI to have forensic testing completed on the hard drive and CD's. In November 2004, Hunt gave the deputies items found by her former landlord in a storage shed at the resale store, which included a blue "CPU tower," paperwork, naked photographs of children, and more CD's. The FBI used the "known victim list," which is a national database of children known to have been victims of child pornography, to determine whether the images on appellant's hard drive matched child pornography on the internet. The images on appellant's hard drives and CD's did not match images of children on the FBI's known victim list. Four of the images of children on the external hard drive were of the 10– and 11–year–old sons of appellant's former roommate, Betty Baum. One of the pictures depicted Baum's 11–year–old son's anus and scrotum and was taken in the children's bedroom in the house in which they had resided with appellant. The other photographs were of Baum's sons in their underwear at the house in which they had resided with appellant.

The CD's contained images of appellant naked, as well as images of young males naked and engaged in sexual activities. The white laptop had emails to and from appellant, a copy of appellant's Wisconsin driver's license, a copy of appellant's automobile insurance, pictures of Hebert and C.H., pictures of appellant and his family, and images of young males naked and engaged in sexual activities. The external hard drive contained emails to and from appellant, images of young males naked and engaged in sexual activities, some of the same images of appellant naked, and images of child pornography that were on the above-mentioned CD's. The safe contained receipts for computer equipment, a box of blank checks in appellant's name, appellant's birth certificate, and appellant's father's death certificate.

At trial, Agent David Hendricks, a computer forensics examiner for the FBI, testified as an expert witness for the State. Agent Hendricks had a bachelor's degree in business administration with majors in information management systems and quantitative business analysis. He had worked for the FBI for more than seven

---

during the suppression hearing, Hebert testified, "We went back to the trailer and the resale shop and grabbed the black laptop *from the RV* and the other computer, the safe. Called the authorities to come pick it [sic] up." (Emphasis added.) Hebert testified before the jury "And we went back to the RV to gather a couple more things that [C.H.] had left. And that's when we found the black laptop. And I had brought it back to the house and called authorities to turn it over." However, C.H. testified as follows that the black laptop was taken *from the resale store:*

[State:] Where'd you find the black laptop?
[C.H.:] On top of the computer desk.
[State:] Is that in the warehouse?
[C.H.:] Yes, sir.

years and received 200 hours of specialized training to become a certified forensic examiner. Agent Hendricks was "A-plus" certified, which was a certification in hardware and operating systems, and "advanced data recovery analysis" certified in internet processing, Windows NT, Windows 9x, and Macintosh. Agent Hendricks was a member of the International Association of Computer Investigative Specialists and the High Technology Crime Investigation Association. Agent Hendricks had done approximately 150 forensic examinations for the FBI. In this case, he testified that he had used specialized software, I–Look, which created an exact duplicate of a hard drive, allowing forensic analysis without changing anything on the original hard drive. Using I–Look, Agent Hendricks had made exact copies of the original hard drives.[5] Agent Hendricks testified that they were exact copies because the "Hash values"[6] of the copies matched those of the originals.

Appellant's trial counsel asked Agent Hendricks on voir dire whether the "Hash value" was a formula that Hendricks personally knew. Agent Hendricks testified that "Hash value is a program that we run against the media that gives us a value, mathematical formula. I'm not sure exactly how the formula or algorithm works, but it's been approved by our headquarters and it's the formula that we use to get that value." Agent Hendricks testified that he did not know from where the mathematical formula for the Hash values came, but that he had seen it and that the program that

he used to duplicate the hard drives was industry standard and generally accepted in the scientific community. Appellant's trial counsel objected to Agent Hendricks's being presented as an expert because he allegedly did not know how the program worked to reproduce the copies of the original hard drives and, therefore, his testimony was not sufficiently reliable. The trial court allowed Agent Hendricks to testify and admitted into evidence copies of appellant's hard drives.

Appellant's counsel also objected to the admission of State's exhibits 65, 66, and 94—pictures of appellant naked—as not being relevant. Appellant's counsel further objected to those exhibits' being admitted in their entirety and requested that the photographs be redacted to "cover up the genitals" of appellant. The trial court overruled appellant's counsel's objections and admitted State's exhibits 65, 66, and 94 without redactions.

### Motion to Suppress

In issue one, appellant contends that the trial court erred by denying his "oral motion to suppress" because the evidence seized from his RV and the resale store was illegally obtained by theft or burglary.[7]

### A. Standard of Review and Burden of Proof

 In a motion-to-suppress hearing, the trial court is the sole trier of fact and

**5.** According to Hendricks's testimony, State's exhibit 43 was an exact copy of State's exhibit 10 (Western Digital hard drive); State's exhibit 42 was an exact copy of State's exhibit 3 (black laptop); and State's exhibit 41 was an exact copy of State's exhibit 2 (white laptop).

**6.** Hash value is the "fingerprint" of a piece of media. Hash value is used to verify that the original data is the same as the copied data.

**7.** Although appellant phrases issue one in terms of evidence seized from his "trailer home," we construe his argument on appeal to include the evidence taken from the resale store as well because his argument references items, such as the safe, that were taken from the resale store, not his RV.

judge of witness credibility and may believe or disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000). We review the trial court's ruling on a motion to suppress evidence for abuse of discretion. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). "At the hearing on the motion, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Id.* In reviewing the record, we defer to the trial court's determination of facts, particularly when the trial court's findings turn on an evaluation of the credibility and demeanor of the witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). We apply the same deference in reviewing the trial court's rulings on mixed questions of law and fact to the extent that the rulings turn upon a similar credibility evaluation. *Id.* If a mixed question of law and fact does not turn on a witness's credibility and demeanor, however, we review the trial court's determination de novo. *Id.* When, as in this case, the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court implicitly made findings of fact that support its ruling as long as those implied findings of fact are supported by the record. *Ross*, 32 S.W.3d at 855.

■ The "burden of proof is initially on the defendant to raise the exclusionary issue" and to prove facts to support his assertion; then, the burden shifts to the State to prove that it complied with the law's requirements. *Pham v. State*, 175 S.W.3d 767, 772 (Tex.Crim.App.2005); *see Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex.Crim.App.2005).

**B. Preservation of Error**

■ The State contends that appellant did not preserve his argument on appeal that the trial court erred by failing to suppress certain evidence because appellant did not file a pretrial motion to suppress the complained-of evidence and the trial court improperly construed appellant's oral objection as a motion to suppress.

■ In order for a complaint to be presented on appeal, a timely request, objection, or motion generally must have been made to the trial court, stating the grounds "with sufficient specificity to make the trial court aware of the complaint." TEX.R.APP. P. 33.1(a)(1)(A). A motion to suppress is a specialized objection to the admissibility of evidence. *Moreno v. State*, 124 S.W.3d 339, 343 (Tex.App.-Corpus Christi 2003, no pet.). Therefore, a motion to suppress must meet all of the requirements of an objection, that is, it must be timely and sufficiently specific to inform the trial court of the complaint. *Id.* (citing *Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App.1995)). The trial court must be aware of an objection and be given the opportunity to address it. *See* TEX.R.APP. P. 33.1(a); *see also DeMoss v. State*, 12 S.W.3d 553, 557 (Tex.App.-San Antonio 1999, pet. ref'd).

■ If the defendant's objection or motion to suppress is timely and sufficiently specific to inform the trial court of the nature of the complaint, the complaint is preserved for appeal. *Ex parte Little*, 887 S.W.2d 62, 65–66 (Tex.Crim.App.1994) (addressing objections); *Porath v. State*, 148 S.W.3d 402, 413 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (applying same standard to motions to suppress).

Although appellant's trial counsel did not file a pre-trial motion to suppress, at trial he objected by stating,

Your Honor, we seek to suppress and exclude the evidence seized illegally by

breaking and entering into [appellant's] trailer. Everything derived thereafter becomes fruit of the poisonous tree. We seek to move to exclude the safe as arising out of an illegal entry, the illegal theft and taking of property from [appellant's] trailer ... Under Article 38.23, anything arising out of illegal crime is subject to exclusion.

The trial court held a hearing outside of the presence of the jury and overruled appellant's request to exclude the complained-of evidence, stating, "Okay, I'm not suppressing the evidence. I'm giving you a Jury instruction, though. I'll make sure it's in the Jury charge."

Appellant counsel's oral objection at trial was sufficient to preserve appellant's complaint on appeal that the trial court erred by denying his "oral motion to suppress." *See Cardenas v. State*, 857 S.W.2d 707 710, 711 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd); *cf. Hansen v. State*, 224 S.W.3d 325, 330 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd) (holding that although appellant's statutory-violation argument was not included in appellant's written motion to suppress, his oral objection at trial was enough to notify the trial court, with sufficient specificity, of appellant's objection that private citizen's actions amounted to violation of laws of Texas and his request that evidence be excluded under Texas Code of Criminal Procedure article 38.23).

### C. Admission of Evidence

Appellant argues that the evidence taken from his RV and the resale store should have been suppressed because it was illegally obtained by theft or burglary.

#### 1. Law

Article 38.23 of the Texas Code of Criminal Procedure forbids the admission of evidence seized by any person or officer when that evidence has been obtained in violation of the state or federal constitutions or in violation of state or federal law. Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). Thus, evidence that a private person has obtained by committing a crime is not to be admitted against an accused on the trial of a criminal case. *See Jenschke v. State*, 147 S.W.3d 398, 400 (Tex.Crim. App.2004) (citing *State v. Johnson*, 939 S.W.2d 586, 588 (Tex.Crim.App.1996)). However, the Texas Court of Criminal Appeals has held that "when a person who is not an officer ... takes property that is evidence of crime, without the effective consent of the owner and with intent to turn over the property to an officer, the conduct may be non-criminal even though the person has the intent to deprive the owner [of that property.]" *Jenschke*, 147 S.W.3d 398 at 402. The issue in *Jenschke* was whether critical evidence supporting the accused's rape conviction was admissible because the parents of the rape victim had obtained the evidence only after having burglarized the accused's vehicle. *Id.* at 399. The Texas Court of Criminal Appeals held that the evidence was not admissible because the record clearly showed that the parents held onto the evidence for nearly two years before turning it over to authorities; thus, it could not be said that the parents burglarized the accused's vehicle with the requisite intent of immediately turning over the found evidence to the police. *Id.* at 403.

▮ A person commits burglary when he, without the effective consent of the owner, enters a building or habitation and commits or attempts to commit a felony, a theft, or an assault. *See* Tex. Pen.Code Ann. § 30.02(a)(3) (Vernon 2003). Ownership is not restricted to those persons having title interest in property, but can include those in possession. *Ex Parte Davis*, 542 S.W.2d 192, 195 (Tex.Crim.App. 1976); *see* Tex. Pen.Code Ann. § 1.07(a)(35)

(Vernon Supp.2006). "Possession" is "actual care, custody, control, or management." *See* Tex. Pen.Code Ann. § 1.07(39) (Vernon Supp.2006). A person commits theft when he unlawfully appropriates property with intent to deprive the owner of the property. *Id.* § 31.03(a) (Vernon Supp.2006) ("Theft").

### 2. Analysis

Evidence was obtained on two separate trips to appellant's RV and the resale shop. During the first trip, Hebert broke a window of the RV, and C.H. climbed through it to open the door for Hebert.

■ Here, although C.H. did not have a key, appellant was home-schooling C.H., and C.H. had been living with appellant in the R.V. the previous three weeks. On the first trip, C.H. and his mother entered appellant's RV to retrieve C.H.'s belongings. Hebert removed a CD case, mistakenly believing that it belonged to C.H. The trial court implicitly found that C.H. was a resident and thus had authority to enter the RV. *See Ross*, 32 S.W.3d at 855. Because the trial court was free to believe any or all evidence presented and to make a determination of historical facts supported by the record after evaluating the credibility and demeanor of the witnesses at the hearing, we give the trial court's implicit determination deference. *See Guzman*, 955 S.W.2d at 89. Even if C.H. did not have appellant's consent to enter

appellant's RV when appellant was not present, the trial court could reasonably have concluded that C.H. and Hebert did not commit theft or burglary, which were the only crimes argued by appellant in the motion-to-suppress hearing,[8] but that they instead entered appellant's RV to retrieve C.H.'s belongings and took the CD case mistakenly thinking that it belonged to C.H.

■ During the second trip, Hebert, Hunt, and C.H. returned to appellant's RV and retrieved the rest of C.H.'s belongings and appellant's black laptop.[9] Hebert, Hunt, and C.H. also went into the resale store, from which they removed appellant's safe, blue computer, and briefcase. They took these items to Hunt's house "in order to turn it [sic] over to the authorities." The State contends that C.H. had permission from appellant to live in the RV and that Hunt co-owned the resale store; therefore, they had a right to enter those premises. Assuming, without deciding, that the taking of evidence on the second entry to appellant's RV and the co-owned resale store violated either section 30.02 or section 31.03 of the Texas Penal Code, we conclude the trial court could have reasonably believed and implicitly found that Hebert's and C.H.'s conduct was authorized by *Jenschke*. *See* Tex. Penal Code Ann. §§ 31.03, 30.02(a); *Jenschke*, 147 S.W.3d at 402. Hebert clearly and unequivocally

---

**8.** At the motion to suppress hearing, the trial court asked, "Now, be specific. What is the crime you're speaking of?" Appellant's counsel responded, "Breaking and entering as well as theft. In this situation if [Hebert] used, and she said she did, fired up CDs and computers to see games that were on there, then she violated the law and knowingly accepted computers, computer networks, computer related items. In the penal code, that is at least three laws broken, anything obtained therefrom subject to exclusion."

 In charging the jury on article 38.23 of the Code of Criminal Procedure and *Jenschke*,

the trial court included the elements for the crimes of burglary and theft. *See* Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon 2005); *see also Jenschke v. State*, 147 S.W.3d 398, 402–03 (Tex.Crim.App.2004).

**9.** C.H. testified that on a daily basis the white laptop could usually be found "right along with the black one." C.H. testified that he recognized the black laptop "because it's the one I never got to work" because appellant did most of the work on the black laptop.

testified that she took the evidence on the second entry of appellant's RV and the resale store for the express purpose of turning it over to the authorities. Hebert first took the evidence to Hunt's house and then called the authorities the next day to turn the evidence over to the police.[10]

We hold that the trial court did not abuse its discretion by overruling appellant's motion to suppress and by admitting the complained-of evidence. *See Jenschke,* 147 S.W.3d at 402–03.

We overrule appellant's issue one.

### Admission of Photographs of Appellant

■ In issue two, appellant argues, "The trial court erred when it allowed into evidence photographs and images of appellant with his genitals exposed."

■ When determining whether photographic exhibits were properly admitted, the question is not whether the exhibits are more prejudicial than probative, but, rather, whether the probative value of the photographs is substantially outweighed by the danger of unfair prejudice. *Salazar v. State,* 38 S.W.3d 141, 151 (Tex.Crim.App.2001); *see* Tex.R. Evid. 403.

We review a trial court's rule 403 decision for an abuse of discretion, meaning that its ruling will be reversed only if the decision is outside the zone of reasonable disagreement. *Salazar,* 38 S.W.3d at 151; *Narvaiz v. State,* 840 S.W.2d 415, 429 (Tex. Crim.App.1992). Rule 403 requires an admissible photograph to possess "some probative value and that its probative value not be substantially outweighed by its inflammatory nature." *Santellan v. State,* 939 S.W.2d 155, 172 (Tex.Crim.App.1997). We consider these general rule 403 factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State,* 144 S.W.3d 487, 489 (Tex.Crim.App.2004). And in the context of the admission of photographs, we also consider the following, nonexclusive list: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in black and white or color, whether they are close-up shots, whether the body is naked or clothed, the availability of other means of proof, and

---

**10.** Appellant cites to *McCuller v. State,* 999 S.W.2d 801 (Tex.App.-Tyler 1999, pet. ref'd), for the proposition that, if the private citizen seizes evidence in violation of the state or federal constitutions, or in violation of state or federal law, such evidence must be excluded. In *McCuller,* the defendant was accused of injury to an elderly person, and the search at issue was conducted by the administrator of the homeowner's estate. *Id.* at 802–03. The administrator had employed the services of a locksmith to gain entry to the house, and "No Trespassing" signs were posted at each entrance to the home. *Id.* at 802. There had been an ongoing dispute in the probate proceedings between the administrator, the heirs, and the defendant regarding who had the right to possess (or to enter) the home. *Id.* at 802. In fact, the estate had begun eviction proceedings against the defendant, but those proceedings were not final before the admin-

istrator gained entry into the home. *Id.* at 803. The Tyler Court of Appeals found that the evidence showed that the administrator had violated section 30.05 of the Texas Penal Code (criminal trespass) by entering the home without legal or constructive authority. *See* Tex. Pen.Code Ann. § 30.05. In so doing, the evidence obtained as a result of the private citizen's illegal entry to the premises was subject to suppression because of article 38.23 of the Texas Code of Criminal Procedure. *McCuller,* 999 S.W.2d at 804–05; *see* Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). Appellant contends that although C.H. "stayed in appellant's trailer on occasion, it is apparent he did not have appellant's permission for unlimited access since he did not have a key to the trailer." However, we apply *Jenschke v. State* because it is controlling. *See id.,* 147 S.W.3d 398, 402–03 (Tex. Crim.App.2004).

other circumstances unique to the individual case. *See id.*

Appellant contends that the introduction of the photographic evidence was unnecessary because "the State introduced numerous amounts of other evidence arguably linking appellant to the computers, including his driver's license, (Exhibit 93), and other documentary evidence such as birth certificate, real property documents and receipts showing purchases of computer parts and accessories." Appellant argues that "introducing the three (3) very graphic and personal pictures of appellant with his genitals exposed served only to inflame the jury and prejudice appellant's right to a fair trial."

Regarding exhibits 65, 66, and 94, we note that the record before this Court contains color photostatic copies and that two of the photographs are of the same image. Exhibits 65 and 94 depict appellant standing partially undressed and holding his penis. Exhibit 66 depicts appellant sitting in a chair nude.

Appellant contended at trial that the pornographic images were placed on his computer and on the CD's by someone else or by a virus. The inherent probative force of the complained-of exhibits was their tendency to show that appellant knowingly possessed the pornographic images of children engaged in sexual conduct. The photographs of appellant naked were found on the same medium as the images of nude young boys engaged in sexual conduct. At trial, more than 50 photographs of naked, young boys engaged in sexual conduct were shown to the jury. Exhibits 65 and 66, which were found on appellant's white laptop were the same photographs as exhibits found on appellant's external hard drive, indicating that appellant transferred

the file from one medium to the other.[11] Indeed, exhibit 65 and exhibit 94, which was from appellant's external hard drive, were the same. It appears that none of the State's other evidence that appellant contends arguably linked appellant to the computers or equipment was located on more than one medium, *i.e.,* appellant's driver's license, and other documentary evidence was not found in multiple locations.

We cannot say that exhibits 65, 66, and 94 were offered solely to inflame the minds of the jury. *See Erazo,* 144 S.W.3d at 489 (holding that if photograph is competent, material, and relevant to issue at hand, it is not rendered inadmissible merely because it is gruesome or might tend to arouse passions of jury, unless it is offered solely to inflame minds of jury). The photographs were highly probative evidence to connect appellant to the child pornography and relevant to appellant's intent. The trial court did not abuse its discretion in implicitly finding that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice to appellant. *See Salazar,* 38 S.W.3d at 151; *see also* Tex.R. Evid. 403.

We hold that under the facts of this case, the trial court did not abuse its discretion by admitting into evidence photographs of appellant with his genitals exposed.

We overrule appellant's issue two.

### Jury Instruction

In issue three, appellant argues that "[t]he trial court committed reversible error in the jury instruction by adding additional language to the Article 38.23 instruction which constituted a comment on the evidence and effectively negated the

11. Agent Stone testified that file number 04190014 which was located on appellant's external hard drive was the same as exhibit 65 and that file number 04190021 which was also located on appellant's external hard drive was the same as Exhibit 66.

Article 38.23 instruction." Appellant admits that he did not object to that portion of the jury charge. Appellant, however, contends that the trial court's jury instruction can be reviewed under the *Almanza* egregious harm standard.

■ In analyzing a jury-charge complaint, we first determine (1) whether error exists in the charge and, then, (2) whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex.Crim.App. 2005). The degree of harm necessary for reversal depends on whether the defendant raised the objection below. *Id.* at 743. When a defendant fails to object, or affirmatively states that he has no objection to the charge, as appellant did, we will not reverse unless the record shows that the defendant suffered "egregious harm." *Id.* at 743–44; *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App.2004) (holding that affirmative denial of objection is equivalent to failure to object to jury-charge error). We will first address whether the charge contained error.

Article 38.23 provides as follows:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex.Code Crim. Proc. Ann. art. 38.23. Thus, evidence that a private person has obtained by committing a crime is not to be admitted against an accused on the trial of a criminal case. *See Jenschke*, 147 S.W.3d 398 at 402 (citing *State v. Johnson*, 939 S.W.2d 586, 588 (Tex.Crim.App.1996)). However, when a person who is not an officer or an agent of an officer takes property that is evidence of crime, without the effective consent of the owner and with the intent to turn over the property to an officer, the conduct may be non-criminal even though the person has intent to deprive the owner and takes the property without the effective consent of the owner. *Id.*

■ The trial court is required to give the jury a written charge "setting forth the law applicable to the case, not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." Tex.Code Crim. Proc. Ann. art. 36.14 (Vernon 2006). A jury charge that constitutes a comment by the court on the elements of the offense charged or assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex.Crim.App.1986); *Grady v. State*, 634 S.W.2d 316, 317 (Tex.Crim.App.1982).

Appellant contends that the trial court's inclusion of the additional language was error because it informed the jury "that they [sic] could ignore the Article 38.23 instruction" and it was a comment on the weight of the evidence. The complained-of portion of the charge stated:

When a person who is not an officer or an agent of an officer takes property that is evidence of a crime, without the effective consent of the owner and with the intent to turn over the property to an officer the conduct may be non-crimi-

nal even though the person has intent to deprive the owner.

As we have discussed above, this instruction is an accurate statement of the law. *See Jenschke,* 147 S.W.3d 398 at 402.

Appellant argued at trial that neither Hebert nor C.H. had his permission to enter his RV and to remove his belongings. The jury charge included instructions on the crimes of burglary and theft. Hebert testified, however, that when she entered appellant's RV the second time and took appellant's property that was evidence of crime, she had done so with the intent to turn over the property to the authorities. As such, the complained-of language was "the law applicable to the case" for purposes of complying with article 36.14 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 36.14. Appellant also argues on appeal that the additional language was a comment on the weight of the evidence because it "tracked the testimony of Misty Hebert." Appellant does not explain how the complained-of language expresses an opinion about the evidence or assumes the truth of a controverted fact. We fail to see how the trial court's inclusion of law that applied to the case amounted to a comment on the weight of the evidence.

We cannot say that the complained-of language was error because the trial court's charge tracked the law applicable to the case and did not comment on the weight of the evidence. *See* TEX.CODE CRIM. PROC. ANN. arts. 36.14–.15, arts. 36.16–.19 (Vernon 2006); *Gray v. State,* 152 S.W.3d 125, 127 (Tex.Crim.App.2004); *see also Bluitt,* 137 S.W.3d at 53; *Alman-*

za *v. State,* 686 S.W.2d 157, 171–72 (Tex. Crim.App.1985). Having determined that the trial court did not err, we need not consider harm under *Almanza.*

We overrule appellant's issue three.

## Reliability of Expert Testimony

In issue four, appellant argues that "[t]he trial court erred in admitting the testimony of David Hendricks as an expert witness without conducting a hearing to determine his expertise and the validity of the underlying science." [12] Specifically, appellant contends that under *Kelly v. State,* [13] Agent Hendricks was not qualified to testify as an expert witness regarding the scientific technique that he had used to reproduce pictures from appellant's computers and computer equipment.

At trial, appellant objected to Agent Hendricks's testifying as an expert because Agent Hendricks did not know how the I–Look program worked to reproduce hard-drive data and he did not know the probability of error of the program to prove the accuracy of the copies.

 We review the trial court's admission of expert testimony for an abuse of discretion. *Kelly v. State,* 824 S.W.2d 568, 574 (Tex.Crim.App.1992); *see Sanders v. State,* 191 S.W.3d 272, 277–78 (Tex.App.- Waco 2006, pet. ref'd) (applying *Kelly* to admissibility of images copied by using EnCase, which is a program like I–Look, to automate task of searching and finding on hard drives); *Williford v. State,* 127 S.W.3d 309, 312–13 (Tex.App.-Eastland 2004, pet. ref'd) (applying same test to EnCase). The Court of Criminal Appeals held in *Kelly* that, to be reliable, evidence

---

**12.** Although appellant asserts on appeal that the trial court did not conduct a hearing to determine Agent Hendricks's expertise and the validity of the underlying science, the record shows that appellant conducted three voir dire examinations of Hendricks in the jury's

presence regarding the agent's qualifications and the underlying data and software used to make the copies of appellant's hard drives.

**13.** 824 S.W.2d 568, 573 (Tex.Crim.App.1992).

derived from a scientific theory must satisfy three criteria: (a) the underlying scientific theory must be valid; (b) the technique applying the principle must be valid; and (c) the technique must have been properly applied on the particular occasion. *Kelly,* 824 S.W.2d at 573. Factors affecting the trial court's proper determination of these three criteria include, but are not limited to, (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such community can be ascertained; (2) the qualifications of any expert testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and to evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of any person who applied the technique on the occasion in question. *Id.* However, the "party seeking to introduce evidence of a scientific principle need not always present expert testimony, treatises, or other scientific material to satisfy the *Kelly* test." *Hernandez v. State,* 116 S.W.3d 26, 28–29 (Tex.Crim. App.2003) (citing *Kelly* ).

We determine whether the trial court erred in implicitly concluding that Agent Hendricks's testimony satisfied the *Kelly* criteria for reliability. Regarding the acceptance by the relevant scientific community, Hendricks testified that I–Look had been "deemed forensically sound." The Greater Houston Regional Computer Forensic Laboratory provided I–Look to examiners to forensically extract necessary files. The FBI issued I–Look as part of Agent Hendricks's training.

 Regarding the qualifications of any expert testifying and the experience and skill of any person who applied the technique on the occasion in question, Agent Hendricks had a bachelors of business administration degree with majors in management information systems and quantitative business analysis. Agent Hendricks was "A-plus" certified, which was a certification in hardware and operating systems, and "advanced data recovery analysis" certified in internet processing, Windows NT, Windows 9x, and Macintosh. Agent Hendricks was a member of the International Association of Computer Investigative Specialists and the High Technology Crime Investigation Association. He had worked for the FBI for more than seven years and had received 200 hours of specialized training to become a certified forensic examiner. His training included software programs like I–Look, which was provided to him by the FBI and was used in FBI investigations to extract and to copy data from hard drives. Agent Hendricks had completed approximately 150 forensic examinations for the FBI and, of those, had used the I–Look program on 75.

Regarding the potential rate of error of the technique, Agent Hendricks explained that the Hash value is essentially a "fingerprint of that piece of media" and that "if two pieces of media have the same Hash value, they are exactly the same," that "every file would have a different Hash value," and that the statistical probability that two different files would have the same "Hash value" was "possibly the 20th power."

 Regarding the clarity with which the underlying scientific theory and technique can be explained to the court, Agent Hendricks explained that he had used I–Look on computer files taken from appellant's external hard drive and computers. I–Look indexed the files, and Agent Hendricks was able to retrieve files containing child pornography from appellant's hard

drives. When Agent Hendricks took a hard drive from a computer, he used a program like I–Look to automate the task of searching and finding the files on it. An image of the drive was taken; the files were copied, and I–Look validated the copy by a "Hash value," an algorithm that verifies the image. Agent Hendrick's testimony established I–Look's reliability.

We hold that the trial court could reasonably have concluded that Agent Hendricks's testimony established both I–Look's reliability and the agent's qualifications to testify to that reliability. We thus hold that the trial court did not abuse its discretion in admitting Agent Hendricks's testimony regarding the evidence obtained from appellant's computers and computer equipment. *See Williford,* 127 S.W.3d at 312–13 (concluding that expert testimony about similar computer program named EnCase was reliable in child pornography case; therefore, holding that trial court did not abuse its discretion in admitting complained-of testimony and evidence).

We overrule appellant's issue four.

### Factual Sufficiency

In issue five, appellant argues that the evidence was factually insufficient to prove "whether appellant knowingly possessed child pornography on his computer."

In a factual-sufficiency review, we view all the evidence, both for and against the finding, in a neutral light and set aside the verdict only if the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, *i.e.,* the verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006). We will reverse a jury's verdict only if the record clearly

shows that a different result is required to prevent a manifest injustice. *See id.* at 416–17; *see also Johnson v. State,* 23 S.W.3d 1, 12 (Tex.Crim.App.2000). In conducting a factual-sufficiency review, we must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

A jury is in the best position to evaluate the credibility of witnesses, and we are required to afford "due deference" to the jury's determinations. *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App.2006). The jury is free to accept or to reject any or all of the evidence presented by either side. *See Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Crim.App.1991). And reconciling conflicting testimony is within the exclusive province of the jury. *Goodman v. State,* 66 S.W.3d 283, 287 (Tex.Crim.App. 2001); *see Cleveland v. State,* 177 S.W.3d 374, 380 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd). We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See Fuller v. State,* 73 S.W.3d 250, 252 (Tex.Crim.App.2002); *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim.App.1997).

A person commits the offense of possession of child pornography if the person knowingly or intentionally possesses material that visually depicts a child, younger than 18 years of age at the time that the image of the child was made, who is engaging in sexual conduct and the person knows that the material depicts such a child. TEX. PEN.CODE ANN. § 43.26(a). Visual material includes any physical medium that allows an image to be displayed on a computer and any image transmitted to a computer by telephone line, cable, satellite transmission, or other method. *Id.* § 43.26(b)(3). "Sexual conduct" includes sexual contact, actual or simulated sexual

intercourse, deviate sexual intercourse, and lewd exhibition of the genitals. *Id.* § 43.25(a)(2) (Vernon Supp.2006). A person possesses a thing when he exercises actual care, custody, control, or management over the thing. *Id.* § 1.07(a)(39).

Here, the jury was instructed that

[a] person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or to cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to the result of his conduct when he is aware.

Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *See Hernandez v. State,* 819 S.W.2d 806, 810 (Tex.Crim.App.1991). A jury can infer knowledge from all the circumstances, including the acts, conduct, and remarks of the accused and the surrounding circumstances. *See Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Crim.App. 1978).

Appellant contends that the evidence is so obviously weak as to undermine confidence in the jury's determination and that the verdict is clearly wrong and manifestly unjust because it "was based on evidence from an expert who admitted he did not know how the program which was the basis of his testimony worked; the testimony of Misty Hebert and the inferences supplied by police and the FBI agent that someone other than appellant could have placed the hard drive in the safe and accessed appellant's computer while he was away."

The evidence contrary to the verdict showed that Hebert, Hunt, and C.H. had opened the safe before having turned it over to the authorities. Sergeant Bonner testified that the contents of the safe could have been placed in it by someone other than appellant. C.H. had access to appellant's blue computer and a white laptop as well as the internet during home-school hours. The State's forensic computer expert testified that he did not know from where the mathematical formula for I–Look came, but that he had seen it and that the program that he used to duplicate the hard drives was industry standard and generally accepted in the scientific community.

The evidence supporting the verdict showed that appellant owned CD's, computers, and hard drives that stored images of children engaged in sexual conduct. C.H. testified that he did not save any photographs to any of appellant's computers or his external hard drive. The FBI investigation of appellant's hard drives and CD's led to the discovery of photographs of appellant naked, as well as a copy of appellant's Wisconsin driver's license, a copy of appellant's automobile insurance, and pictures of appellant and his family that were stored on the same CD's and computer equipment as the child pornography. Four of the images of children on appellant's external hard drive were of Baum's, appellant's former roommate's, 10–year–old and 11–year–old sons. One of the pictures depicted Baum's 11–year–old son's anus and scrotum and was taken in the children's bedroom in the house where they had resided with appellant. Baum identified a photograph stored on appellant's external hard drive as being an image of her 11–year–old son's anus and scrotum that was taken in the house in which they resided with appellant. The images of Baum's sons were found in three

different files, which meant that they were copied or moved three times. Agents discovered child pornography on an external hard drive as well as on CD's, which indicates that the images were not downloaded by an internet virus as appellant contended, but, rather, had to have been deliberately saved to these external devices. Additionally, the pornographic images were stored on appellant's external hard drive, as well as on his computers in similarly named folders. FBI agent Benjamin Stone concluded that the named folders, such as "BLM," "_BLM" and "BARELTL," which stood for "bare little monkeys," and "_pic.min" which stood for "my pictures," could not have been pop-ups from pornography sites, as appellant contended, but, rather, had to have been assigned by the person saving the file. The evidence, such as the numerous photographs recovered, the titles of the folders, appellant's e-mails, and pictures of himself naked that were stored in the same location as the child pornography is not so obviously weak as to undermine confidence in the jury's determination that appellant had knowledge that the child pornography was on his computer. Neither does the evidence on which appellant relies render the jury's verdict against the great weight and preponderance of the evidence.

Having reviewed the evidence under the appropriate standard, we hold that the evidence is factually sufficient to show that appellant knowingly or intentionally possessed child pornography.

We overrule appellant's issue five.

### Conclusion

We affirm the judgment of the trial court.