In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00371-CR
NO. 09-16-00372-CR
NO. 09-16-00378-CR

_____

**ROBERT VAJDA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 15-12-13408-CR,**
**09-07-06767-CR (Count 4), 15-12-13407-CR**

**MEMORANDUM OPINION**

In three cases that were tried together, a jury found Robert Vajda guilty in each case of perpetrating aggravated sexual assaults against S.D.,[1] a child. The

---

[1] The opinion refers to the child identified in the indictment by using a pseudonym, "S.D.," to protect the child's privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting victims of crime "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

1

convictions in the three cases were based on conduct that occurred on or about January 15, 2007, February 10, 2006, and March 10, 2006. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B) (West Supp. 2016).[2] In each of the cases, the jury also found that Vajda should be required to serve a ninety-nine year prison sentence. In the judgment, the trial court ordered Vajda to serve his sentences concurrently.

In his appeal from each conviction, Vajda seeks new trials. All of the appeals raise the same two issues. In issue one, Vajda asserts the trial court erred by admitting evidence of an extraneous crime, possession of child pornography, during his trial. According to Vajda, the images of the children on an external hard drive recovered from an office inside his home were more prejudicial than probative in proving that he was guilty of the aggravated sexual assaults with which he was charged, and the images were not sufficiently linked to him to allow the jury to determine, beyond reasonable doubt, that he was the person who possessed them. In issue two in all three appeals, Vajda argues that he received ineffective assistance of counsel during the guilt-innocence and punishment phases of his trial. According to

---

[2] We cite the current version of the Texas statutes throughout the opinion because any amendments to the sections that are cited are not relevant to the resolution of the issues Vajda raises in his appeal.

2

Vajda, his trial attorney was ineffective because he failed to object to opinions the prosecutor offered about his character in both phases of his trial.

Based on the arguments presented in the appeal, we conclude the trial court acted within its discretion when it chose to admit evidence showing that Vajda possessed images of children engaged in sexual acts during the trial of his cases. We further we conclude the trial court did not abuse its discretion when it concluded that admitting the images would be more probative than prejudicial regarding whether Vajda was guilty of sexually assaulting S.D. With respect to Vajda's claims that he received ineffective assistance of counsel, we hold the record in his trial was not sufficiently developed to overcome the presumption that trial counsel rendered reasonable professional assistance. Because Vajda's issues are without merit, we affirm the judgments from which he has appealed in all three of his cases.

## Background

It is undisputed that S.D. is Vajda's former stepdaughter.[3] Based on the allegations in Vajda's indictment, S.D. was assaulted on various dates when she would have been between nine and ten years old. At trial, S.D. testified that Vajda began sexually assaulting her when she was seven or eight years old. The testimony

---

[3] S.D.'s mother, Irene, and Vajda were divorced approximately eight months after the State began to investigate S.D.'s claim that Vajda had sexually assaulted her.

from the trial indicates that S.D. was twelve years old when she first told her friend about the alleged sexual assaults perpetrated on her by her stepfather.

Shortly after S.D. first told someone about what Vajda had done to her, Child Protective Services initiated an investigation into S.D.'s claims. During the CPS investigation, Detective Billy Ballard collected several computers and devices used to store electronic data from an office inside Vajda's home. Subsequently, Jeffery Chappell, a computer digital forensics agent employed by Homeland Security, conducted a forensic examination on the external hard drive that the police took during the investigation from Vajda's home. When he examined the external hard drive, Agent Chappell found a large number of image files that depicted children engaged in sexual acts. Additionally, Agent Chappell examined a laptop computer and a desktop computer that were also among the electronic devices taken from Vajda's home during the investigation into S.D.'s claims. According to Agent Chappell, the laptop and desktop computers, at some point, had been connected to the external hard drive and used to access its files.

Several months before Vajda's trial, the State filed a motion asking that the court admit the digital evidence that consisted of the pornographic images of children that were on the external hard drive taken from Vajda's home. On the

4

morning of the first day of Vajda's trial, and outside the jury's presence, the trial court conducted a hearing on the State's motion.

Each party called two witnesses during the hearing on the State's motion. Detective Ballard and Agent Chappell testified at the request of the State, while Kit Harrison and Eric Devlin testified at Vajda's request. In his testimony, Detective Ballard explained how, in January 2009, he obtained a laptop computer and an external hard drive from Vajda's home. He also explained how in late January 2009, another detective involved in the investigation into S.D.'s claim recovered a desktop computer from Vajda's home. In the hearing, Agent Chappell explained how he analyzed the digital information that he found on the two computers and the external hard drive. According to Agent Chappell, the external hard drive contained over four thousand images of child pornography. In addition to digital images, the external hard drive had digital files on it that appeared to be files that belonged to Vajda based either on the content of the file or the name of the folder the file was in. Agent Chappell explained that the laptop and desktop contained signs showing that they had been used in the past to read the files that were on the external hard drive. According to Agent Chappell, the external hard drive has folders on it that in his opinion "related to Mr. Vajda and Irene[.]" Irene was Vajda's spouse when police took the computers and external hard drive from Vajda's home. While Agent

5

Chappell explained that he did not have actual knowledge about who originally created the files and folders that were on the storage devices he examined, the evidence he reviewed suggested that "Mr. Vajda created some of them[.]"

During the hearing on the State's motion, Vajda called Dr. Harrison, a psychologist, and Devlin, a digital forensic computer examiner. Dr. Harrison testified that "you cannot predict simply on the basis of child pornography that someone is actually going to offend against children[.]" Before Devlin testified in the hearing, the State stipulated that Devlin was a qualified digital forensic computer examiner. Devlin explained that he reviewed Agent Chappell's reports outlining what he found in his examination of the devices that the police removed from Vajda's home. Devlin agreed that images and videos of children under age 18 engaging in sexual conduct existed on the external hard drive. According to Devlin, there is no way to know who actually created the files that Agent Chappell found on the drive, but he conceded that circumstantial evidence could show who had been responsible for placing the files there. Devlin explained that although child pornography existed on the external hard drive, Agent Chappell's examination, in his opinion, failed to develop sufficient circumstantial evidence to allow the files on the drive to be linked with any specific persons. Devlin testified that he thinks Agent

Chappell is a trustworthy person, and he stated that he has never known Agent Chappell "to lie, mislead, [or] even embellish."

At the conclusion of the hearing, Vajda argued there were other individuals in Vajda's home who could have accessed the computers in the home, and that the forensic examination completed by Agent Chappell failed to offer sufficient support to allow a jury to link Vajda to the pornographic images of the children that existed on the external hard drive. Vajda also argued that the testimony about the pornographic images was more prejudicial than probative in proving that Vajda was guilty of sexually assaulting S.D.

The trial court overruled Vajda's objections, and in the trial, a small number of the files consisting of child pornography were admitted before the jury. At the conclusion of the hearing, the trial court stated that the evidence relevant to the files on the external hard drive was sufficient to allow the jury to find that Vajda had possessed the images on the external hard drive. The trial court further explained that the probative value the prohibited images had in proving Vajda's guilt outweighed any prejudice that might occur by admitting the images in the trial.

Ultimately, in the trial, the State chose to have the trial court admit only a very limited number of the pornographic images that were on the external hard drive removed from Vajda's home. Vajda objected to the admission of the selected

images, claiming that the admission of the selected images was more prejudicial than probative in proving that he was guilty of sexually assaulting S.D. He also argued that the evidence the State introduced to tie him to the images did not sufficiently link him to having possessed the images that the trial court admitted in his trial. When the trial concluded, the jury found that Vajda sexually assaulted S.D. as alleged in the indictments that led to the three convictions that are the subject of these appeals.

## Admission of Child Pornography

In issue one, Vajda complains the trial court erred when it admitted the evidence in his trial designed to show that he was the person who possessed the child pornography taken from his home. According to Vajda, all of the evidence about the child pornography should have been excluded because the State failed to establish that he was the person who possessed those images. Vajda further contends that the testimony and evidence about the images was more prejudicial than probative in proving that he sexually assaulted S.D.

First, we will address whether the trial court acted within its discretion by admitting the evidence showing that pornographic images were discovered on an external hard drive taken from his home. In reviewing complaints about a trial court's decision to admit or to exclude evidence, we apply the usual abuse of

8

discretion standard. *See Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (stating that "[e]vidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character"); *compare* Tex. Code Crim. Proc. Ann. art. 38.37 (West Supp. 2016) (generally, allowing evidence of other crimes, wrongs or acts if committed by a defendant charged with committing aggravated sexual assault or other sexually related crimes against a child where the evidence bears on the defendant's character or shows the act he committed and for which the defendant is on trial was an act committed in conformity with the defendant's character), *with* Tex. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Under an abuse of discretion standard, an appellate court will not overturn the trial court's evidentiary ruling if its ruling falls within the "zone of reasonable disagreement." *Devoe*, 354 S.W.3d at 469.

Vajda relies heavily on Rule 404(b) of the Texas Rules of Evidence, a rule which generally prohibits the introduction of character conformity evidence in a trial, to support the arguments that he presents in issue one. In response, the State argues that notwithstanding the general prohibition on character evidence that is provided in Rule 404, article 38.37 of the Code of Criminal Procedure allows such

9

evidence to be admitted in cases where a defendant is being tried for sexually assaulting a child. *See* Tex. Code Crim. Proc. Ann. art. 38.37 § 2(a)(1)(D); *id*. § 2(b). Nonetheless, even under article 38.37, the State must still establish that the evidence of the alleged extraneous offense is sufficient to allow a jury to reasonably find, beyond reasonable doubt, that the defendant committed the uncharged crime. *Id*. § 2-a. According to Vajda, the State failed to present sufficient evidence to allow the jury to conclude that the external hard drive and the images on it were ever in his possession. He concludes by stating that "[t]here was not one piece of evidence put forth by the State to show that [he] was the one in fact who possessed the child pornography."

In our opinion, the evidence linking Vajda to the external drive and the images on it allowed the jury to reasonably conclude that he possessed the drive and the pornographic images of children that are on it. Under Texas law, a person commits the offense of possessing child pornography if:

> the person knowingly or intentionally possesses, or knowingly or intentionally accesses with intent to view, visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct, [] and the person knows that the material depicts the child as described [above].

Tex. Penal Code Ann. § 43.26(a)(1), (2) (West Supp. 2016). Under the Penal Code, possession is defined as "actual care, custody, control, or management." *Id.* §

10

1.07(a)(39) (West Supp. 2016). A person acts knowingly or with knowledge of the nature of his conduct or circumstances "when he is aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b) (West 2011).

In his appeal, Vajda does not argue that the external hard drive does not contain image files depicting children engaged in sexual conduct. Instead, he argues the evidence does not show that he was the person who downloaded the files and put them on the drive. According to Vajda, the fact that other individuals were living with him in the home and could access the external hard drive prevented the jury from concluding that he placed the images on the drive. However, creating or copying the image files to the external hard drive is not the only way the jury could have linked Vajda to having actual care, custody, control, or management of the child pornography that was found on the drive. The testimony before the court reflects that Vajda purchased the external hard drive, so that is one of the circumstances that supports the jury's conclusion that the images on the drive were in his care, custody, or control. Additionally, the external hard drive was found in the office of Vajda's home, the evidence showed that Vajda had access to the office, and the forensic examination performed on the drive revealed the drive contains text files that the testimony established were files that probably belonged to Vajda given the content of the files. For instance, the text files on the external hard drive included

11

a copy of Vajda's resume, and a folder designated with the name "Rob," a shortened form for Robert, Vajda's first name. The nickname on the folder, "Rob," is not a nickname that the evidence shows as being consistent with the names of any of the others who were living in Vajda's home. The jury also heard very damaging testimony from Irene about Vajda's reaction when she told him that the police had taken the external hard drive from their house. According to Irene, Vajda told her that she "should have burned it." Given Irene's testimony about Vajda's statement, the jury could reasonably infer that Vajda knew the external hard drive contained illegal pornographic images because he had accessed them. *See Wilson v. United States,* 162 U.S. 613, 621 (1896) ("The destruction, suppression, or fabrication of evidence undoubtedly gives rise to a presumption of guilt, to be dealt with by the jury."); *Martin v. State*, 151 S.W.3d 236, 244 n.6 (Tex. App.—Texarkana 2004, pet. ref'd) ("It is a well-established principle that destruction of evidence is probative of guilt."). Finally, the evidence before the court indicated that the images on the external hard drive could be accessed and that they had not been deleted. *See Wise v. State*, 364 S.W.3d 900, 904 (Tex. Crim. App. 2012) (discussing present possession approach to evaluating possession of files on a computer's hard drive). The presence of the undeleted files on the external hard drive containing child pornography was circumstantial evidence that allowed the jury to infer that the images on the external

12

hard drive had been deliberately saved and were not there by accident. *See Krause v. State*, 243 S.W.3d 95, 112 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

In our opinion, Vajda's arguments ignore substantial and probative circumstantial evidence that allowed the jury to conclude that he possessed the prohibited image files on the external hard drive that police took from his home. Under Texas law, circumstantial evidence may be as probative as direct evidence in proving a defendant's guilt. *See Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). Despite Vajda's argument that direct evidence was required, the State was not required to introduce direct testimony to prove that Vajda exercised care, custody, or control over the prohibited images. And, the State was also not required to disprove Vajda's theory that someone else might have initially placed the prohibited images on the external hard drive. *See Wise*, 364 S.W.3d at 903. Viewing the evidence as a whole, and viewing the inferences raised by the evidence before the jury in the proper light, we conclude the jury could have reasonably found, beyond reasonable doubt, that Vajda knowingly exercised care, custody, control, or management of the prohibited image files that were found on his external hard drive. *Wise*, 364 S.W.3d at 906-08; *Krause*, 243 S.W.3d at 111-12.

Vajda also argues that even if the prohibited images were admissible under article 38.37, they should have been excluded because their prejudicial value

outweighed their probative value in proving that he sexually assaulted S.D. Generally, relevant evidence is presumed to be admissible, and it is also presumed that relevant evidence will be more probative than prejudicial. *See* Tex. R. Evid. 403; *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). For instance, Rule 403 requires that relevant evidence be excluded only if there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001); *see* Tex. R. Evid. 403. Moreover, unfair prejudice does not mean simply that the evidence the trial court admitted in the case caused some type of injury to the defendant's case. *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). "Rather[,] it refers to 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.* (quoting *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993)).

In performing a Rule 403 analysis, trial courts are required to engage in a balancing test by considering:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence

14

will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *see* Tex. R. Evid. 403. In proving that Vajda sexually assaulted S.D., the State relied heavily on S.D.'s testimony describing the sexual acts that she claimed occurred that involved Vajda. Noting in the trial that S.D. first complained about the alleged assaults in 2009, years after the assaults allegedly occurred, Vajda argued that S.D. was not a reliable witness. Given the delayed outcry, and evidence that Vajda introduced from an expert who testified that the act of possession of child pornography has not been shown to cause sexual assaults, Vajda argues that even if he possessed the images, the evidence did not have much probative value in proving he was guilty of committing the alleged sexual assaults. According to Vajda, no correlation exists between individuals who sexually abuse children and individuals who possess child pornography. However, his argument is inconsistent with the evidence that was introduced during the trial. Vajda's expert, Dr. Harrison, testified that 55 percent of individuals "who abuse children are found to be in possession of child pornography."

It was undisputed in the trial that S.D. was a child when the sexual assaults allegedly occurred. In our opinion, possessing pornographic images of children is circumstantial evidence showing that a person has a prurient interest in children. Under article 38.37, Vajda's prurient interest in children is a matter that concerns his

character; as such, the trial court had the discretion to find that evidence relevant to a prurient interest in children was admissible to prove that he was the type of person who would commit other acts consistent with the abnormal sexual interest that Vajda has in children. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b). The State was not required to show that possessing pornographic images is a factor in causing sexual assaults for the evidence concerning the prohibited images to be admitted. The evidence showing that Vajda possessed child pornography was admissible as character evidence, one of the circumstances proven in the trial to show that Vajda had the capacity to sexually assault a child. While Dr. Harrison's testimony that the possession of child pornography had not yet been shown to cause a person to sexually assault a child, the evidence still had probative value in proving that Vajda has an abnormal sexual interest in children. Because Vajda was accused of sexually assaulting a child, the relevance of the evidence that he was found to possess child pornography did not depend on the exceptions in Rule 404 of the Texas Rules of Evidence. The evidence was admissible under article 38.37 of the Code of Criminal Procedure, a provision that allows such evidence even if the same evidence is inadmissible under Rule 404. *Compare* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b), *with* Tex. R. Evid. 404(b)(2).

16

A decision by a trial court to admit or to exclude evidence amounts to an abuse of discretion only when the court makes a ruling that falls outside the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016). In our opinion, the trial court's ruling to admit the evidence regarding Vajda's possessing child pornography is one that clearly fell within the zone of reasonable disagreement. Vajda's arguments that the trial court erred by admitting the evidence are overruled. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b). We overrule Vajda's first issue.

Ineffective Assistance of Counsel

In his second issue, Vajda contends he received ineffective assistance of counsel based on his trial attorney's repeated failure to object when the prosecutor engaged in acts that Vajda has characterized in his brief as prosecutorial misconduct. Vajda notes the misconduct first occurred while the prosecutor was cross-examining him in the guilt-innocence phase of the trial. According to Vajda, the prosecutor attacked him on a personal level by insinuating that he "was the devil" and by opining that he "was vile and evil." Vajda argues the misconduct continued into the punishment phase of his trial when the prosecutor, in final argument, asked the jury to consider how many times Vajda abused S.D. According to Vajda, this argument

17

was improper because it allowed the jury to reach an "emotional verdict" and asked "the jury to put themselves in the victim's shoes."

To establish a claim of ineffective assistance of counsel, the defendant must first establish that his attorney made errors so serious that the defendant's attorney failed to function as "counsel" as guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, the defendant must "show that the deficient performance prejudiced the defense." *Id.* "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

Generally, to prove a claim of ineffective assistance, the defendant must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 690). In Vajda's case, Vajda never filed any motions claiming that he received ineffective assistance of counsel while his case was before the trial court. Consequently, the record in Vajda's direct appeal was not sufficiently developed to allow us to determine whether his trial counsel violated the standards established in *Strickland*. *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012).

While Vajda filed a motion for new trial, his motion did not claim that he received ineffective assistance of counsel. Additionally, nothing in the record shows that the trial court conducted an evidentiary hearing on Vajda's motion for new trial. Therefore, it does not appear that Vajda's trial attorneys ever had the opportunity to respond to Vajda's complaints about how his case was handled. Generally, when the attorneys who represented the defendant did not have an opportunity to explain their actions in providing the defendant with a defense, appellate courts presume that the actions of the attorney related to matters of choices presented between reasonable trial strategies. *See Strickland*, 466 U.S. at 689; *Michel v. Louisiana*, 350 U.S. 91, 101 (1955); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Here, the record before us in the appeal does not affirmatively establish that Vajda received ineffective assistance of counsel under the *Strickland* standards. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). We overrule Vajda's second issue without prejudice to his right to raise his claims alleging ineffective assistance of counsel in a post-conviction writ. *See Goodspeed*, 187 S.W.3d at 392; *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000).

Having overruled Vajda's issues, we affirm the trial court's judgments in Trial Cause Numbers 15-12-13408-CR, 09-07-06767-CR (Count 4), and 15-12-13407-CR.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on August 7, 2017
Opinion Delivered December 6, 2017
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.