

## NUMBER 13-13-00597-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**TORIBIO QUINTERO,**                                                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                **Appellee.**

### On appeal from the 147th District Court
### of Travis County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Longoria
### Memorandum Opinion by Justice Benavides

By two issues, appellant Toribio Quintero challenges his conviction for felony driving while intoxicated, a third degree felony. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09 (West, Westlaw through Ch. 46 2015 R.S.). Quintero challenges: (1) the sufficiency of the evidence and (2) the admissibility of a warrantless blood draw. We

affirm.

## I.    BACKGROUND[1]

At a jury trial, Gloria Pineda testified that on January 29, 2012, she called 911 to report a reckless driver.   She told the operator she observed a vehicle swerving on the road.   When Pineda pulled up next to the vehicle, she observed a man who was "drinking something in a paper sack" and thought he was drunk.   Pineda followed the vehicle until it came to a stop, and she notified the 911 operator where the vehicle was located.

Officer Steven Constable with the Austin Police Department was the first to arrive at the scene and made contact with the vehicle.   Officer Constable found Quintero in the driver's seat, with the vehicle off, but the keys in the ignition.   Quintero told Officer Constable that he had been "cruising."   According to Officer Constable, Quintero had slurred speech and an odor of alcohol about him.   Quintero stated to Officer Constable that he had drank six beers.   Officer Constable was able to locate three cans of beer outside of Quintero's vehicle that were empty but still cold to the touch and two beer cans inside the vehicle, one empty and one unopened, that were both still cold to the touch. Quintero stated to Officer Constable that he was hard of hearing and Officer Constable testified that Quintero's answers did not always relate to the questions he asked.

Officer Lawrence Nicoletti, also with the Austin Police Department, testified that he was the DWI officer involved in this case and performed the Standardized Field Sobriety Tests on Quintero at the scene.   Officer Nicoletti stated he noticed that Quintero had

---

[1] This appeal was transferred from the Third Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court.   See TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through Ch. 46 2015 R.S.).

Quintero was granted an out-of-time appeal by the Court of Criminal Appeals when the trial court failed to appoint an appellate attorney following his trial counsel's request at sentencing.

bloodshot, glassy eyes, slurred speech, and an odor of alcohol. Quintero stated to Officer Nicoletti he had consumed five beers. Officer Nicoletti testified Quintero displayed multiple clues on the field sobriety tests that indicated signs of intoxication. Officer Nicoletti and the other officers discussed if they would be able to prove that Quintero was driving since none of them observed Quintero driving. However, the officers determined they could prove the driving element based on Pineda's statements and Quintero's own admission of "cruising." Quintero refused a breath test and Officer Nicoletti decided to draw Quintero's blood based upon Quintero's previous convictions for driving while intoxicated. *See* Tex. Penal Code Ann. §49.04; Tex. Transp. Code Ann. § 724.012 (West, Westlaw through Ch. 46 2015 R.S.).

The blood evidence was admitted at trial without objection from Quintero's trial counsel.[2] Austin Police Department chemist Glenn Carl Harbison testified as to the results of the blood draw evidence. He stated the test showed Quintero's blood contained .165 grams of ethanol per 100 milliliters of blood, or about two times the legal blood alcohol content limit of .08 in the State of Texas. *See* Tex. Penal Code Ann. § 49.01.

Corporal Ryan Huling of the Austin Police Department was called as a witness by the defense. He was also at the scene and spoke to Pineda by telephone. Corporal Huling stated Pineda had told him she did not want to return to the scene, meet with officers, or participate with the investigation any further. Corporal Huling also testified that Pineda just wanted to get Quintero off the streets and when she was told she needed

_____

[2] The record also shows that Quintero did not file a pre-trial motion to suppress, nor did he urge a motion to suppress at trial.

3

to identify Quintero, Pineda told him "well, then he wasn't driving." Corporal Huling also testified that it was common for witnesses to disappear and not want to be involved after initial contact. Corporal Huling stated Pineda seemed confused about the location she saw Quintero driving in. However, he later admitted he was trying to get information out of Pineda and she was answering questions to confirm Quintero's general location. Corporal Huling also admitted that Pineda was the only person who could place Quintero behind the wheel driving the vehicle.

Quintero also testified in his defense. He admitted to drinking alcohol but said it was much earlier in the day at a local park. Quintero admitted during cross-examination that he was intoxicated at the time the officers arrived. However, Quintero stated he was in his vehicle to sleep off his intoxication and was going to return home when he felt sober, but that he had not been driving. Quintero also stated that he believed Pineda was "making up" her story because he had seen a vehicle illegally dumping trash earlier in the day and honked at them, and the vehicle was a similar make and model of the vehicle Pineda described herself being in.

The jury found Quintero guilty of felony driving while intoxicated. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09. Quintero stipulated to two prior driving while intoxicated convictions. The indictment also contained enhancement paragraphs of two other prior felony convictions, which elevated Quintero's range of punishment to that of a habitual offender. *See Id.* § 12.42. The trial court sentenced Quintero to twenty-five years imprisonment in the Texas Department of Criminal Justice—Institutional Division. This appeal follows.

## II.    SUFFICIENCY CHALLENGE

By his first issue, Quintero challenges the sufficiency of the evidence to sustain his conviction for felony driving while intoxicated based on Pineda's testimony.

### A.    Standard of Review and Applicable Law

In reviewing the sufficiency of evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.    *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see also Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).    In viewing the evidence in the light most favorable to the verdict, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony.    *Brooks*, 323 S.W.3d at 899.    "It is also the exclusive province of the jury to reconcile conflicts in the evidence."    *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).    It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilty is warranted by the cumulative force of all incriminating evidence.    *Winfrey*, 393 S.W.3d at 768.    Therefore, in analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.    *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).    Our review of "all of the evidence" includes evidence that was properly and improperly admitted.    *Id.*    When the record supports

5

conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Id.* Direct and circumstantial evidence are treated equally in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.*

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Under a hypothetically correct jury charge, Quintero is guilty of driving while intoxicated if he was intoxicated while operating a motor vehicle in a public place. *See* TEX. PENAL CODE ANN. § 49.04.

## B.    Discussion

Quintero argues exclusively that the evidence was insufficient based on Pineda's testimony alone. Both Pineda and Quintero testified at trial. The jury, as the sole judge of the credibility of the witnesses, made the determination that Pineda's testimony was credible. The record shows that Pineda was the only person who actually saw Quintero driving that evening. The officers involved in Quintero's arrest testified that they did not see him driving. Officer Nicoletti had a discussion on his dash camera video with other officers to make sure they have enough evidence to support the element of "operating a motor vehicle." Even though Pineda was reluctant to cooperate on the night of Quintero's arrest, she testified at trial and was able to identify Quintero. Pineda was

6

subject to cross-examination by Quintero's trial counsel who addressed many of the discrepancies Quintero complains about regarding Pineda's testimony.

Additionally, Quintero testified in his own defense. He relayed his version of the events of that day: that he was at the park drinking; he went to his car to "sober up" before driving; and that he did not operate this vehicle after becoming intoxicated. The jury makes the determination as to who to believe and find credible. *Brooks*, 323 S.W.3d at 899. Viewing the evidence in a light most favorable to the verdict, the jury believed Pineda's testimony. *See Winfrey*, 393 S.W.3d at 768. It is the jury's exclusive province to decide which witness to believe and disbelieve. *See Wesbrook*, 29 S.W.3d at 111. As a result, we find the testimony of Pineda and additional evidence was sufficient to support the jury's verdict. We overrule Quintero's first issue.

### III.    ADMISSIBILITY OF BLOOD DRAW EVIDENCE

By his second issue, Quintero asserts that because he revoked his implied consent to the warrantless seizure of his blood and there were no exigent circumstances, the trial court committed fundamental error in admitting the blood analysis results into evidence.

### A.    Preservation of Error

"In order for a defendant to preserve his complaint for appellate review, he must present to the trial court a timely objection, request, or motion stating the specific grounds for the ruling he wishes." *Lyssy v. State*, 429 S.W.3d 37, 40 (Tex. App.—Houston [1st Dist] 2014, no pet.) (citing TEX. R. APP. P. 33.1(a)). "An appellant's issue must correspond with the objection he made at trial." *Id*.; *see Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim App. 1995). "'An objection stating one legal theory may not be used to support a different legal theory on appeal.'" *Id.* (citing *Johnson v. State*, 803 S.W.2d

7

272, 292 (Tex. Crim. App. 1990)). "This is true even if the alleged error implicates constitutional guaranties." *Id.* "'The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it [and] (2) to give opposing counsel the opportunity to respond to the complaint.'" *Id.* (citing *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2000)). "Therefore, if a party fails to properly object to constitutional errors at trial, these errors can be forfeited." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). "Unless a litigant exercises his option to exclude evidence it is to be admitted." *Marin v. State*, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993) (en banc), *overruled on other grounds, Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).

As a threshold matter, the State argues that Quintero did not preserve his right to argue on appeal for the first time about the warrantless blood draw. *See Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010) ("Preservation of error is a systemic requirement on appeal."). We agree.

**B.    Discussion**

In order to preserve error for our review, Quintero needed to object to the admission of the evidence during trial or urge a motion to suppress either pre-trial or during trial. *See Krause v. State*, 243 S.W.3d 95, 102–03 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding that an oral motion to suppress can provide sufficient notice to the trial court to preserve appellant's complaint on appeal). Here, Quintero neither made an objection to the admission of the blood evidence at trial or in any pre-trial motion to make the trial court aware of any issues he had regarding the blood

8

evidence admissibility.   As a result, we hold that Quintero's issue is not preserved for our review.   *See* TEX. R. APP. P. 33.1(a); *Wilson*, 311 S.W.3d at 473–74.   We overrule Quintero's second issue.

### IV.   CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
27th day of August, 2015.