**Affirmed and Memorandum Opinion filed November 14, 2023**



In The

# Fourteenth Court of Appeals

NO. 14-22-00457-CR,
NO. 14-22-00458-CR,
NO. 14-22-00459-CR

**RICHARD BLAKE BRADLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Cause Nos. 19-CR-2515, 19-CR-2516, 19-CR-2517**

## MEMORANDUM OPINION

A Galveston County jury found appellant Richard Blake Bradley guilty of three separate offenses of possession of child pornography. *See* Tex. Penal Code § 43.26(a)(1).[1] After finding the State's punishment enhancement allegations true, the

---

[1] Appellate cause no. 14-22-00457-CR, which is trial court cause no. 19-CR-2515, is hereinafter referred to as "Offense 1"; appellate cause no. 14-22-00458-CR, which is trial court cause no. 19-CR-2516, is hereinafter referred to as "Offense 2"; and appellate cause no. 14-22-

jury assessed Bradley's punishment for each offense as confinement for life in the Texas Department of Criminal Justice. In four issues on appeal, Bradley challenges the sufficiency of the evidence and the jury instructions. We affirm.

## *Background*

Cecil Arnold is a detective with the Pearland Police Department and a member of the Internet Crimes Against Children Division (ICAC), a specialized law enforcement task force connected with the National Center for Missing and Exploited Children (NCMEC). NCMEC has compiled a database of over 40 million pictures and videos seen by law enforcement that depict child pornography. Every image in NCMEC's database has a "hash or sha value."[2] As a member of ICAC, Detective Arnold utilizes peer-to-peer file sharing networks and IP addresses to identify individuals that are uploading and downloading child pornography files.

In July 2019, Detective Arnold accessed Free Net to search for IP addresses in Brazoria and Galveston County that requested "keys" that contain child pornographic images and videos.[3] He received an alert that an IP address requested at least 17 unique keys of child pornographic pictures and videos between May 20

---

00459-CR, which is trial court cause no. 19-CR-2517, is hereinafter referred to as "Offense 3."

[2] According to Detective Arnold, a hash or sha value is a secure algorithm. Every electronic device has an internal program that assembles letters and numbers to make a pixel. In turn, the pixels form a picture, and the values assigned to the pixels for a specific photograph creates a hash or sha value.

[3] Pearland's city limits extend into three different counties—Harris, Fort Bend, and Brazoria. As a member of the ICAC task force, Detective Arnold conducts investigations for a specific geographic region consisting of 49 counties extending from Nacogdoches to Corpus Christi and including Galveston County.

Detective Arnold testified that the Dark Web is the "underbelly" of the internet and requires a separate search engine to access it. Free Net is a program that allows an individual to become a "node" and download files from users on the Dark Web. Free Net also allows an individual "to have blocks of data encrypted," "download keys from free sites," and "download and assemble the files" that were searched. In the context of the Dark Web, keys are stored in "free sites" and each key "calls or assembles all the different blocks of data to create a file."

2

and June 12. Of the 17 unique keys identified, Detective Arnold selected 3 keys to download. He reassembled the blocks of each key to verify if they were in fact child pornography. Each key he recreated contained pictures or videos of child pornography.

Detective Arnold testified that he contacted another task force member with Homeland Security to submit an administrative subpoena to the internet company that owned the target IP address.[4] Comcast responded to the subpoena request and identified the subscriber of the target IP address as Marvin Booher in Bacliff, Texas. Detective Arnold went to the address to determine who lived at the residence and if the Wi-Fi connection was secure. This information was used to obtain a search warrant. Among other things, the search warrant permitted law enforcement to seize: (1) any and all information whether stored electronically as computer data or on paper or other medium; (2) any data or images of persons who appear to be under the age of 18 engaged in sexual acts or posed in a manner to elicit a sexual response or otherwise engaging in sexual conduct; (3) any data referring to online contacts or correspondences with persons regarding the trading of child pornography or communication with children; (4) computers and any computer programs, software, and equipment; and (5) documents showing dominion and control over the residence.

On July 30, Detective Arnold, James Staton, a detective with the Pearland Police Department and a member of ICAC, and a large team of law enforcement, arrived at the Bacliff address to execute the search warrant. In the process of

---

[4] "[A]n ICAC task force may issue and cause to be served an administrative subpoena that requires the production of records or other documentation . . . if the subpoena relates to an investigation of an offense that involves the sexual exploitation of a minor; and there is reasonable cause to believe that an Internet or electronic service account provided through an electronic communication service or remote computing service . . . has been used in the sexual exploitation or attempted sexual exploitation of the minor." Tex. Gov't Code § 422.003(b).

executing the search warrant, Detective Arnold observed a man riding a bicycle. This man was identified as Roberto Calderon, and he lived in a boat in the front yard of the Bacliff address. After entering and securing the Bacliff address, Detective Arnold learned that Bradley and his wife occupied the first room, Booher occupied the second room, and Bradley's daughter occupied the third room.

Law enforcement seized and searched several electronic devices from Bradley's and Booher's bedrooms, as well as a cellular phone belonging to Calderon. There was no evidence of child pornography on Calderon's cellular phone. The electronic devices seized and searched from Booher's bedroom included a Dell computer tower, an Acer laptop, an HP tower, and a Rago computer tower. None of these devices contained any evidence of Dark Web software, Free Net artifacts, child erotica, or child pornography.

The electronic devices seized and searched from Bradley's bedroom included, among other things, an Acer laptop, an HP Pavilion laptop, a Kindle Fire tablet, Bradley's cellular phone, a Western Digital drive, and a Toshiba 320 GIG drive. Some of the electronic devices seized did not contain any evidence of child pornography. However, several of Bradley's electronic devices contained Dark Web software, Free Net artifacts, and child pornography.

The Acer laptop contained 757 files of child pornography, 262 files of child exploitive material, and 12 files of computer-generated images.[5] Detective Staton, a computer forensic examiner for the ICAC task force, found "Windows shell bags," which indicated that Free Net was previously installed on the Acer laptop. Additionally, other identifying information, such as pictures of Bradley's birth

---

[5] ICAC categorizes child abuse materials in three categories: category 1 is used to classify child pornography; category 2 is used to classify child exploitive material where it is difficult to determine the child's age; and category 3 is used to classify computer-generated images, such as anime, that depict child-related pornography.

certificate and driver's license, was located on the Acer laptop. Detective Staton did not locate any identifying information linking Booher to the Acer laptop. The HP laptop contained 36 files of child sexual abuse material. Although Free Net was not actively installed on the HP laptop, Detective Staton found Free Net artifacts, as well as browsing history where Free Net had been searched and accessed. On the HP laptop, Detective Staton located saved credit cards with Bradley's name. While searching the Kindle tablet for evidence, Detective Staton found search terms indicative of child pornography. The device name of the Kindle tablet was "Richard's Fire."

Bradley's cellular phone contained "two collage-type pictures." Detective Staton testified that "one of the pictures in one of the corners [of the collage] appeared to be child pornography." On the Western Digital drive, Detective Staton found one video of child sexual abuse material and 12 images of child exploitive material. On the Toshiba drive, Detective Staton found 5,947 files of child sexual abuse material, over 10,000 files of child exploitive material, and 8 files of computer-generated images. This drive was connected to the HP laptop, and Free Net was actively installed.

Both Booher and Bradley were interviewed by law enforcement. Booher's first interview took place by telephone because he was not at the residence during the execution of the search warrant. He explained that he is an over-the-road truck driver. According to Booher, he did not have access to the Dark Web and did not know about Free Net. Bradley was also interviewed by law enforcement. He specifically denied ever accessing the Dark Web.

Bradley testified in his defense. He denied the allegations in the indictments and claimed that he did not have a lot of knowledge about the Dark Web. However, on cross-examination, he acknowledged that he accessed the Dark Web "a few

5

hundred times" with a program called "The Onion Router." He claimed that he accessed the Dark Web to swap information about politics and other "incendiary" issues because he is militia. Bradley agreed that the child pornography found did not belong to his wife, his daughter, or Calderon. He believed that it belonged to Booher and described Booher's skill with computers as "pretty extreme." Even though Detective Staton testified that none of the devices processed contained evidence that they were remotely accessed by another user, Bradley insisted that Booher remotely accessed Bradley's devices. Bradley explained that Booher knew how to remove a laptop hard drive and attach it to a computer tower and frequently assisted Bradley with projects. According to Bradley, Booher had access to Bradley's electronic devices, actually used Bradley's devices on numerous occasions, and Booher's use was not monitored. Bradley's wife denied that any of the child pornography found belonged to her, her daughter, or Calderon. According to Bradley's wife, she never saw Booher with any of Bradley's electronics.

A jury found Bradley guilty of three counts of possession of child pornography as alleged in the indictments. The jury found the State's enhancement allegations to be true and assessed Bradley's punishment for each offense as confinement for life in the Texas Department of Criminal Justice.[6]

### *Discussion*

Bradley raises four issues on appeal, asserting that (1) the evidence was insufficient in Offense 1 because "actual sexual intercourse" was not depicted in the State's evidence, (2) the evidence was insufficient in Offense 3 because the State failed to prove beyond a reasonable doubt that the person depicted in the image was

---

[6] The first enhancement paragraph alleged that Bradley was convicted of the felony offense of indecency with a child in March 1999. The second enhancement paragraph alleged that Bradley was convicted of the felony offense of failure to comply with required sex offender registration in July 2011.

a child under 18 years old, (3) the evidence was insufficient in all three cases because the State failed to prove beyond a reasonable doubt that Bradley intentionally or knowingly possessed child pornography, and (4) the trial court erred in failing to instruct the jury on the meaning of "proof beyond a reasonable doubt."

We consider these issues separately, beginning with Bradley's evidentiary sufficiency challenges.

## *Sufficiency of the Evidence*

### I. The Jury was Justified in Finding that "Actual Sexual Intercourse" was Depicted

In his first issue, Bradley challenges the sufficiency of the evidence in Offense 1 and alleges that actual sexual intercourse was not depicted. Because the indictment alleges "actual sexual intercourse," Bradley argues that the State was required to prove "some penetration of a female sex organ by a male sex organ."

We review legal sufficiency challenges under the standard set by the United States Supreme Court in *Jackson v. Virginia*. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing 443 U.S. 307, 319 (1979)). In reviewing the legal sufficiency of the evidence to support a criminal conviction, a court of appeals will determine whether, after viewing the evidence in the light most favorable to the verdict, the trier of fact was rationally justified in finding the essential elements of the crime beyond a reasonable doubt. *Id.* at 902. We measure the evidence "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

The hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Ramjattansingh*

*v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018). "'As authorized by the indictment' means the statutory elements of the offense as modified by the charging instrument." *Id.* When a Texas statute lists more than one method of committing an offense or definition of an element of an offense, and the indictment alleges some, but not all, of the statutorily listed methods or definitions, the State is limited to the methods and definitions alleged. *Id.* (citing *Cada v. State*, 334 S.W.3d 766, 773–74 (Tex. Crim. App. 2011); *Curry v. State*, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000)). However, the hypothetically correct jury charge "does not necessarily have to track exactly all of the charging instrument's allegations." *Id.* Whether an allegation must be included in the hypothetically correct jury charge depends on whether the variance between the allegation and proof is material. *Ramjattansingh*, 548 S.W.3d at 546–47 (citing *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001)).

Direct and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The evidence-sufficiency standard of review is the same for both direct and circumstantial evidence. *Hooper*, 214 S.W.3d at 13. For the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict. *Hooper*, 214 S.W.3d at 13. As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d

459, 461 (Tex. Crim. App. 1991). We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Brooks*, 323 S.W.3d at 922. On appeal we may not reevaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Section 43.26 of the Texas Penal Code provides that

[a] person commits an offense if the person knowingly or intentionally possesses, or knowingly or intentionally accesses with intent to view, visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct . . .; and the person knows that the material depicts the child. . . . Tex. Penal Code § 43.26(a).

The application paragraph of the jury charge provided:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 30th date of July, A.D., 2019 in Galveston County, Texas, the defendant, RICHARD BLAKE BRADLEY, did then and there intentionally or knowingly possess visual material that visually depicted, and which the defendant knew visually depicted a child who was younger than 18 years of age at the time the image of the child was made, engaging in sexual conduct, to-wit: actual sexual intercourse, then you will find the defendant guilty of Possession of Child Pornography as alleged in the indictment.

Consequently, the State was limited to the method alleged in the indictment—actual sexual intercourse. *See Ramjattansingh*, 548 S.W.3d at 546. Section 43.26 also provides that the term "sexual conduct" has the meaning assigned in section 43.25. Tex. Penal Code § 43.26(b)(2). Thus, the phrase "sexual conduct" means "sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, . . . or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola." *Id.* § 43.25(2). But the phrase "actual sexual intercourse" is not statutorily defined.

9

When interpreting a statute, an undefined word or phrase should be construed and understood according to its common, everyday usage. *Hanna v. State*, 426 S.W.3d 87, 92 (Tex. Crim. App. 2014). According to Black's Law Dictionary, the term "actual" means "[e]xisting in fact; real." *Actual*, Black's Law Dictionary (11th ed. 2019). The term "intercourse," which includes "sexual intercourse," involves the penetration of the vagina by the penis. *Intercourse*, *id.* Accordingly, we interpret the phrase "actual sexual intercourse" to mean the real penetration of the vagina by the penis. Because the indictment alleged "actual sexual intercourse" as the form of "sexual conduct" depicted in the visual material, the State was required to establish that there was some penetration depicted in the visual material.

In this case, the jury was presented with a video that was admitted as part of State's Exhibit No. 55. This video depicts a naked adult male and a naked juvenile female engaged in an apparent sexual act. Bradley complains that this video only depicts "a naked male . . . pushing his groin against the naked bottom of a juvenile female." Due to the angle of the video, Bradley asserts that it is impossible "to see the sexual organ of the young female in order to determine whether it actually is being penetrated." Bradley suggests that the jury could not assume that actual sexual intercourse was depicted when the video "fails to depict a connection between genitals." Bradley, however, does not cite, and we have not found, any authority that supports the proposition that the factfinder must actually see penetration to reasonably conclude that actual sexual intercourse occurred. Indeed, the jury viewed the video and was permitted to use common sense, common knowledge, personal experience, and observations from life in drawing an inference that the female depicted in the video was engaged in actual sexual intercourse. *See Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

Additionally, Detective Staton testified that this video visually depicts "an

10

underage female engaging in the sexual act, penetration by a male." He explained that in the video, he could see "[the naked man's] penis up against where [the female's] vagina and anus would be." The jury also heard testimony that several of Bradley's electronic devices contained evidence of child pornography. According to Detective Staton, many of the files on Bradley's devices showed sexual intercourse and actual penetration.

Bradley emphasizes that none of the thousands of pornographic photographs and videos Detective Staton testified about were shown to the jury and stresses that Detective Staton's testimony should be disregarded for two reasons: (1) the State "represented to the trial judge that the State was relying on a specific image" and (2) "only evidence which was presented to the jury should be considered for sufficiency review." Again, Bradley does not cite any authority for either of these propositions. Even if the jury did not view the other pornographic photographs and videos, the jury, as the exclusive judge of the facts, could accept or reject Detective Staton's testimony. *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony."). And we defer to the factfinder's resolution of conflicts in the evidence, weighing of the testimony, and drawing of reasonable inferences from basic facts to ultimate facts. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the judgment, the record contains more than sufficient evidence to support that the jury was justified in finding that "actual sexual intercourse" was depicted in the child pornography possessed by Bradley. Accordingly, we overrule Bradley's first issue.

II. **Physical Inspection of Photograph is Sufficient for Factfinder to Make an Age Determination**

11

In his second issue, Bradley argues that the evidence in Offense 3 was insufficient because the photographic evidence relied on by the State was "ambiguous as to whether the model is over or under 18 years old." Bradley posits that the "image at issue depicts a maturely developed female." We disagree.

In addressing this point of error, we employ the same standard of review discussed above. The determination of the age of a child in a possession of child pornography case is a fact issue for the factfinder to decide. *Gerron v. State*, 524 S.W.3d 308, 318 (Tex. App.—Waco 2016, pet ref'd). The factfinder may make this determination by any of several methods: (1) personal inspection of the child; (2) inspection of the photograph or motion picture that shows the child engaging in the sexual performance; (3) oral testimony by a witness to the sexual performance as to the age of the child based on the child's appearance at the time; (4) expert medical testimony based on the appearance of the child engaging in the sexual performance; or (5) any other method authorized by law or by the rules of evidence at common law. Tex. Penal Code § 43.25(g). As discussed above, the factfinder "may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta*, 429 S.W.3d at 625.

In this case, the indictment for Offense 3 alleged that Bradley possessed child pornography depicting a child who is "engaging in sexual conduct, to-wit; lewd exhibition of the genitals." A photograph depicting a naked female wearing a bonnet with a pacifier in her mouth was admitted as part of State's Exhibit No. 55. Bradley testified that the female in the photograph appeared to be under 18 years old, but he could not say with certainty that she was actually under 18 years old. According to Bradley, he was uncertain because "[p]eople do weird cosplay stuff all the time." Bradley also explained that the female could have appeared younger because there

are "plenty of drug addicts out there that basically become skin and bone skeleton people." Bradley added that there are people that are over the age of consent, but their bodies look younger "because they're basically emaciated." Bradley maintains that the photograph is ambiguous because there was no expert opinion from a medical doctor or professor of anatomy to guide the jury in determining the female's age. Bradley suggests that the jury could not ascertain that the female in the photograph was under 18 years old based on her appearance alone and points out that the State did not produce any other evidence of the female's age, such as a birth certificate.

Contrary to Bradley's assertions, expert testimony is not required to determine a child's age in a possession of child pornography case. *See* Tex. Penal Code § 43.25(g) (providing that expert medical testimony is one of five methods the factfinder may use to determine whether the child who participated in sexual conduct was younger than 18 years old). Detective Arnold testified that when ICAC investigates allegations of child pornography in which there are images or videos where it is unclear if a child younger than 18 years of age is depicted, it is not characterized as child pornography. He explained anything that is "age difficult" is not investigated, and the entire category is filtered from his search engine when he accesses Free Net. Moreover, the jury heard the testimony of Detective Staton, a computer forensic examiner for ICAC. He testified that the photograph visually depicted "an underage female dressed up like an infant spreading her vagina, holding it apart with her fingers." This photograph was recovered on one of the loose hard drives in Bradley's bedroom. Detective Staton believed that the child was under 18 years of age based on personal inspection of the photograph and emphasized the child's face, body structure, and sexual organs indicate that she was under 18 years old.

As stated, the jury is the sole judge of the credibility of the witnesses and the weight given to the evidence. *See Brooks*, 323 S.W.3d at 899. The Penal Code provides a variety of methods by which the factfinder may determine the age of the child who is depicted while engaging in a sexual act, and the inspection of a photograph alone is sufficient for a factfinder to make an age determination. Tex. Penal Code § 43.25(g)(2). The jury was able to view the photograph at issue and determined that the female depicted was under the age of 18 at the time the image was made. Viewing the evidence in the light most favorable to the judgment, we conclude that the evidence is sufficient to support the jury's guilty finding. Accordingly, we overrule Bradley's second issue.

## III. Jury Could Have Reasonably Inferred that Bradley Knowingly Possessed Child Pornography

In his third issue, Bradley asserts that the evidence in all three counts of the indictment was insufficient because the State failed to establish that he knowingly possessed the child pornographic images. Bradley alleges that his testimony indicated that he did not have exclusive possession of the computer equipment containing the pornographic images and videos. According to Bradley, Booher could have downloaded the child pornography, and the jury could not have found beyond a reasonable doubt that Bradley knowingly or intentionally possessed the pornographic materials. We disagree.

In addressing this point of error, we employ the same standards of review discussed above. A person commits possession of child pornography if he "knowingly or intentionally possesses visual material . . . that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct," and he "knows that the material depicts the child" in this manner. Tex. Penal Code § 43.26(a). A person acts "intentionally" or with intent

14

"with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). A person acts knowingly or with knowledge of the nature of his conduct or circumstances "when he is aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b). The Penal Code defines "possession" of contraband as "actual care, custody, control, or management." *Id.* § 1.07(a)(39).

When contraband is not found on a person or is not in a location that is under the exclusive control of a person, mere presence at the location where the contraband is found is insufficient by itself to establish actual care, custody, or control of the contraband. *See Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). "However, presence or proximity, when combined with other evidence, either direct or circumstantial . . . , may be sufficient to establish possession beyond a reasonable doubt." *Id.* Accordingly, a factfinder may infer that the defendant intentionally or knowingly possessed contraband not in his exclusive possession if there are sufficient independent facts and circumstances justifying such an inference. *Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016).

In *Wise*, the Texas Court of Criminal Appeals noted the "peculiarities of determining knowing or intentional possession of computer pornography" and concluded that "each case must be analyzed on its own facts." 364 S.W.3d at 904–05. Thus, the court held that in computer-pornography cases, "like all criminal cases, a court must assess whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence considered in the light most favorable to the verdict." *Id.* at 905.

Sufficient evidence to support a jury's determination that a defendant had knowledge of child pornography on his electronic devices may include evidence that (1) the child pornography was found in different computer files, showing that the

images or videos had been copied or moved; (2) the child pornography was found on an external hard drive or a removable storage device, which would indicate that the images or videos were deliberately saved on the external device; (3) the child pornography stored on the computer and the external hard drive was stored in similarly named folders; (4) the names of the folders containing child pornography necessarily were assigned by the person saving the files; or (5) numerous images or videos of child pornography were recovered from the defendant's electronic devices. *See Krause v. State*, 243 S.W.3d 95, 110–12 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

In this case, there are several independent facts that justify an inference that Bradley knowingly possessed child pornography. First, Bradley was not truthful with law enforcement when questioned about the Dark Web. Initially, Bradley denied having any knowledge about the Dark Web but later admitted that he accessed the Dark Web "a few hundred times." Second, one of Bradley's laptops contained Free Net artifacts, Free Net was actively installed on another laptop, and search terms indicative of child pornography were found on the Kindle tablet named "Richard's Fire." No one else at the Bacliff address was named Richard. Third, law enforcement recovered thousands of child pornographic and child exploitive images and videos from devices located in Bradley's bedroom. The fact that several thousand files of child pornography were recovered from Bradley's electronic devices is circumstantial evidence that he knowingly possessed child pornography. *See id.* at 111–12. Fourth, the evidence supports an inference that Bradley knowingly possessed child pornography because Detective Staton discovered child pornography on an external hard drive located in Bradley's bedroom. *See id.* at 112.

Bradley contends that Booher could have remotely accessed Bradley's devices or physically downloaded the files to an external hard drive. Bradley

suggests that Booher had access to Bradley's electronic devices, actually used Bradley's devices unsupervised, and knew how to remove a laptop hard drive. However, as discussed above, Detective Staton testified that none of the electronic devices seized from the residence contained evidence that they were remotely accessed by another user, and none of the electronic devices seized from Booher contained any evidence of Dark Web software, Free Net artifacts, or child pornography. Additionally, Bradley's wife testified that she never saw Booher with any of Bradley's electronic devices. Moreover, for the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt. *Wise*, 364 S.W.3d at 903. Thus, the jury reasonably could have rejected the alternative hypotheses raised by Bradley to explain the child pornography found on his electronic devices. *See id.* at 906–08.

Viewing the totality of the evidence and inferences in a light most favorable to the verdict, the jury reasonably could have inferred that Bradley knowingly had care, custody, control, or management of the child pornography found on the electronic devices in his bedroom. *See id.* Accordingly, we overrule Bradley's third issue challenging the sufficiency of the evidence to support his convictions.

### *Jury Instruction*

In his fourth issue, Bradley contends that the trial court erred by failing to instruct the jury on the meaning of proof beyond a reasonable doubt. According to Bradley, the trial court should have given an instruction consistent with the language approved in *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991) (providing a six-paragraph jury instruction on the definition of reasonable doubt). Bradley acknowledges that the portion of *Geesa* which required trial courts to instruct juries on the definition of beyond a reasonable doubt was specifically overruled in *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). Nonetheless, he argues that a

17

*Geesa* instruction would have been beneficial.

The *Paulson* court explained that "the better practice is to give no definition of reasonable doubt at all to the jury. Thus, each individual juror must decide what "proof beyond a reasonable doubt" means and the amount of proof required to meet the beyond a reasonable doubt standard. *See Fuller v. State*, 363 S.W.3d 583, 587 (Tex. Crim. App. 2012) (providing that jurors should supply their own meaning of the phrase "beyond a reasonable doubt" based on "their own common-sense understanding of the words"); *Murphy v. State*, 112 S.W.3d 592, 598 (Tex. Crim. App. 2003) (explaining that "each juror must decide for himself what amount of proof would constitute the threshold of beyond a reasonable doubt"). The *Paulson* court, however, also noted "[o]n the other hand, if both the State and the defense were to agree to give the *Geesa* instruction to the jury, it would not constitute reversible error for the trial court to acquiesce in their agreement." 28 S.W.3d at 573.

In this case, the trial court did not err by failing to define reasonable doubt in the jury charge because it was not required to do so. *Id.* Moreover, there is no evidence that the State and the defense agreed to the *Geesa* instruction to the jury. Therefore, the trial court did not err in denying Bradley's request to instruct the jury on the meaning of proof beyond a reasonable doubt.

Accordingly, we overrule Bradley's fourth issue.

### *Conclusion*

We affirm the judgment of the trial court.


/s/ Frances Bourliot
Justice

18

Panel consists of Chief Justice Christopher and Justices Bourliot and Hassan.

Do Not Publish — TEX. R. APP. P. 47.2(b).